**BRICKWOOD CONTRACTORS, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**No. 99–388C.**

United States Court of Federal Claims.

June 29, 2001.

Robert M. Moore, Moore & Lee, LLP, McLean, Virginia, attorney of record for the plaintiff, Charlie C.H. Lee and Kristen A. Bennett, Moore & Lee, LLP, of counsel.

David D. Zimmerman, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., Robert E. Kirschman, Assistant Director and David M. Cohen, Director, United States Department of Justice, for the defendant.

## ORDER

HORN, Judge.

The above-captioned case comes before the court on defendant's motion for relief from judgment pursuant to Rule 60(b) of the Rules of the United States Court of Federal Claims (RCFC). On April 9, 2001, the court issued a published decision in this case, finding the defendant liable to the plaintiff for attorneys' fees and expenses pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412 (1994 & Supp. IV 1998). *Brickwood Contractors, Inc. v. United States,* 49 Fed.Cl. 148, 165 (2001). In this opinion, the court ordered the parties to consult and to file a joint status report addressing the proper computation for the EAJA recovery. *Id.* Final judgment in this case was issued by this court on May 1, 2001, awarding the plaintiff a modest $10,939.09 in attorneys' fees and expenses. On June 8, 2001, the defendant filed a motion for relief from judgment arguing that a decision issued on May 29, 2001 by the United States Supreme Court in *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources,* —— U.S. ——, 121 S.Ct.

1835, 149 L.Ed.2d 855 (2001), after judgment was issued by this court in the above-captioned case, invalidates the basis of this court's May 1, 2001 judgment. The defendant also filed a motion for expedited consideration of its motion for relief from judgment because the defendant's time for appeal expires on July 2, 2001, and defendant represented that it may file a notice of appeal to the United States Court of Appeals for the Federal Circuit. Defendant argues that the filing of a notice of appeal would "deprive this Court of jurisdiction to allow our motion for reconsideration." Because the court is not inclined to grant defendant's motion, even if a notice of appeal were to be filed, this court could consider and issue an opinion on defendant's RCFC 60(b) motion. *See Yachts Am., Inc. v. United States,* 8 Cl.Ct. 278, 281 (permitting the trial court to consider a 60(b) motion after an appeal has been filed if the court intends to deny the motion), *aff'd,* 779 F.2d 656 (Fed.Cir.1985), *and cert. denied,* 479 U.S. 832, 107 S.Ct. 122, 93 L.Ed.2d 68 (1986). The court, however, has expedited consideration of defendant's motion to provide a more complete record to the appellate court should the defendant decide to appeal this court's judgment.

## FINDINGS OF FACT

The facts of this case were fully detailed in this court's April 9, 2001 opinion, *Brickwood Contractors, Inc. v. United States,* 49 Fed.Cl. 148, and those facts are incorporated into this opinion. Only a brief recitation of the most pertinent facts to the present motion will be repeated here. On February 9, 1999, the Department of the Navy issued IFB (Invitation for Bids) No. N62477-97-B-0083, Repair Elevated Water Storage Tanks, Naval Air Station, Patuxent River, Maryland. The Navy subsequently issued amendments to the solicitation which added PCB (Polychlorinated Biphenyl) contamination testing to the base requirements and added three options related to removing the contamination from the water tanks. Amendment 0003 stated that "the Government will evaluate offers for award purposes by adding the total price for all options to the total price for the basic requirement." On April 6, 1999, five

bids, including that of the plaintiff, were received and publicly opened. Based upon the total price (base bid plus options), the Navy identified plaintiff as the apparent low bidder.

Pursuant to Amendment 0004, the base specifications would have required the contractor to test for PCB contamination. In late April 1999, however, the Navy conducted tests on the water towers to determine if the options would ever need to be exercised. On April 29, 1999, the Navy concluded that there was no evidence of PCB contamination. Therefore, on May 5, 1999, the Navy issued a Determination and Findings for Evaluating Bids Exclusive of Options, announcing that the bids on the options would be excluded from the final price evaluation because they were no longer needed. If the options had been evaluated along with the base bids, plaintiff would have had the low bid. Without the options, plaintiff would have been displaced in the evaluation by two other bidders who had lower base bids. On June 15, 1999, the Navy issued Amendment 0005 to the solicitation, which attempted to convert the solicitation from an IFB to a Request for Proposals (RFP), deleted the Evaluation of Options clause and eliminated the requirements regarding PCBs. Following the conversion to an RFP, the Navy intended to negotiate with the bidders for bids which did not include the cost of the unnecessary PCB testing.

On June 18, 1999, plaintiff filed a bid protest in the United States Court of Federal Claims alleging that "[t]he Navy's attempt to convert an IFB to an RFP, however, is not authorized by FAR or any other law or regulation." Plaintiff requested the court to enter judgment "enjoining the Navy from converting the IFB to an RFP," and "directing that the Navy proceed with the award of the contract to Brickwood." The court held a hearing on the bid protest on June 21, 1999. On July 16, 1999, after plaintiff filed its lawsuit, the defendant issued Amendment 0009, by which the government cancelled the solicitation (N62477–97–R–0083). Defendant filed a motion to dismiss in this court, informing the court that "in light of the Court's comments at the TRO hearing, the Navy has cancelled the solicitation and plans to resolicit using a new IFB." Because the Navy cancelled the solicitation at issue instead of converting from an IFB to an RFP, this court dismissed plaintiff's protest on July 22, 1999.

On August 23, 1999, plaintiff filed an EAJA application seeking attorneys' fees and expenses for work performed on the lawsuit protesting the Navy's attempted conversion to an RFP and on the EAJA application. Brickwood was ultimately awarded the Patuxent River Naval Air Station contract on January 10, 2000.

In this court's April 9, 2001 opinion, the court found that the plaintiff satisfied the requirements necessary for entitlement to attorney's fees and expenses under EAJA and that the defendant was liable to the plaintiff under EAJA. *Brickwood Contractors, Inc. v. United States*, 49 Fed.Cl. at 165. Specifically, the court found that the plaintiff was the "prevailing party" in the June 18, 1999 bid protest because it had succeeded on a significant issue in the litigation which resulted in a benefit to the plaintiff. *Id.* at 156. In its opinion, the court discussed the definition of "prevailing party," including the "catalyst theory," which posits that a plaintiff may be considered a "prevailing party" for fee-shifting purposes without litigating to a final judgment if the plaintiff brings a lawsuit that is a " 'causal, necessary, or substantial factor in obtaining the result' plaintiff sought." *Id.* at 154 (quoting *Public Citizen Health Research Group v. Young*, 909 F.2d 546, 549 (D.C.Cir.1990)) (quoting *Comm'rs Court of Medina County, Texas v. United States*, 683 F.2d 435, 442 (D.C.Cir.1982)).

On June 8, 2001, the defendant filed a motion for relief from judgment, arguing that "[a]fter judgment was entered, but before the time to file a notice of appeal expired, the United States Supreme Court issued its decision in *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources*, —— U.S. ——, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), invalidating the 'catalyst theory' as a basis for finding prevailing party status for federal attorney's fee statutes." The defendant asserts that because "intervening case law governs cases

even after a trial court enters judgment" and because the facts in *Buckhannon* are indistinguishable from the facts in *Brickwood*, this court entered a judgment that has become "erroneous as a matter of law." Thus, defendant argues that the court should find that Brickwood was not a prevailing party, and, therefore, relieve the defendant from the May 1, 2001 judgment pursuant to either RCFC 60(b)(1) or RCFC 60(b)(6).

## DISCUSSION

■ In pertinent part, RCFC 60(b) states: On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

RCFC 60(b). The United States Court of Appeals for the Federal Circuit has found that the act of balancing "all of the factors arising in a Rule 60(b) motion is committed to the sound discretion of the [trial] court." *W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.,* 977 F.2d 558, 562 (Fed.Cir.1992); *see Dynacs Eng'g Co., Inc. v. United States,* 48 Fed.Cl. 240, 241 (2000) ("The decision to grant relief under Rule 60(b) is addressed to the discretion of the court, and the court may weigh equitable considerations in the exercise of its discretion."). Although the court has entered judgment in this case, the decision of the United States Supreme Court, if applicable, provides authoritative law because "[w]hen [the Supreme Court] applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review

and as to all events, regardless of whether such events predate or postdate [the Supreme Court's] announcement of the rule." *Harper v. Virginia Dep't of Taxation,* 509 U.S. 86, 96, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993). Because this court's May 1, 2001 judgment is still open on direct review, the Supreme Court's *Buckhannon* opinion may apply retroactively to the present case.

Federal courts have not agreed on whether a trial court may properly reopen or reconsider a judgment pursuant to RCFC 60(b)[1] because of an alleged mistake of law. For example, some courts have held that an allegedly erroneous legal finding cannot provide a basis for relief under Rule 60(b). *See, e.g., McKnight v. United States Steel Corp.,* 726 F.2d 333, 336 (7th Cir.1984) ("Although it is apparent that the law of this circuit on which the district court relied in dismissing plaintiff's complaint ... has been overruled by *Zipes* [*v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) ], a change in the applicable law after entry of judgment does not, by itself, justify relief under 60(b)." (citations omitted)); *Silk v. Sandoval,* 435 F.2d 1266, 1267–68 (1st Cir.) ("If the court merely wrongly decides a point of law, that is not 'inadvertence, surprise, or excusable neglect' " within the meaning of Rule 60(b)(1).), *cert. denied,* 402 U.S. 1012, 91 S.Ct. 2189, 29 L.Ed.2d 435, *and reh'g denied,* 404 U.S. 876, 92 S.Ct. 29, 30 L.Ed.2d 123 (1971); *Berryhill v. United States,* 199 F.2d 217, 219 (6th Cir.1952) ("It appears to be the settled rule that a change in the judicial view of the applicable law, after a final judgment, is not a basis for vacating a judgment entered before announcement of the change."). One rationale for rejecting mistakes of law as a basis for 60(b) relief rests on the premise that "[t]he appropriate way to seek review of alleged legal errors is by timely appeal; a 60(b) motion is not a substitute for an appeal or a means to enlarge indirectly the time for appeal." *McKnight v. United States Steel*

---

1. Although the cases discussed below include examination of Federal Rule of Civil Procedure (FRCP) 60(b) in appeals from federal District Court cases, the United States Court of Appeals for the Federal Circuit has acknowledged that FRCP 60(b) and RCFC 60(b) are virtually identical. *See Info. Sys. and Networks Corp. v. United*

*States,* 994 F.2d 792, 795 n. 3 (Fed.Cir.1993). Moreover, the United States Court of Appeals for the Federal Circuit has referred to the interpretations of other Courts of Appeals regarding FRCP 60(b) to assist in establishing standards for interpreting RCFC 60(b). *See id.* at 794–95.

*Corp.,* 726 F.2d at 338 (citing *Peacock v. Bd. of School Comm'rs,* 721 F.2d 210, 214 (7th Cir.1983) (additional citations omitted)).

Among the findings by courts that a change in the law does not justify Rule 60(b) relief are those involving situations in which the judgment for which the party requests reconsideration has already become final and nonappealable. *See, e.g., W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.,* 977 F.2d at 560, 561, 563 (affirming denial of a request under 60(b) to modify a settlement agreement entered into "by the deliberate choice of the parties" because "[t]he consent order embodying the settlement between Gore and Bard is a final judgment; it is accompanied by finality as stark as an adjudication after full trial" and because the court must give weight to the " 'overriding interest in the finality and repose of judgments' on consent"); *McKnight v. United States Steel Corp.,* 726 F.2d at 338 ("By not filing a timely appeal from the order dismissing his case, plaintiff waived his right to have this court review errors of law made by the district court in that order. Such errors may not be used as a basis to obtain relief under 60(b)."); *Collins v. City of Wichita, Kansas,* 254 F.2d 837, 839 (10th Cir.1958) (finding that relief under Rule 60(b) was unjustified when the appellants "exhausted their remedies in the courts, and when the litigation was concluded, there was a final judgment against them which, according to a later decision, was wrong"); *Berryhill v. United States,* 199 F.2d at 219 (affirming denial of Rule 60(b) relief when appellant freely elected against filing an appeal).

Other United States Courts of Appeals have found that, pursuant to a Rule 60(b) motion, trial courts may review the impact of changes in the applicable law after a judgment is entered. *See, e.g., Ritter v. Smith,* 811 F.2d 1398, 1401 (11th Cir.) ("The Eleventh Circuit has recognized that Rule 60(b) can be used to remedy a mistake in the application of the law.... [S]ometimes more than a 'mere' change in the law is necessary to provide the grounds for Rule 60(b)(6) relief.... A significant factor in this case is the fact that the previous erroneous, judgment of this court has not been execut-

ed."), *reh'g denied,* 817 F.2d 761 (11th Cir.), *and cert. denied,* 483 U.S. 1010, 107 S.Ct. 3242, 97 L.Ed.2d 747 (1987); *D. C. Fed'n of Civic Assocs. v. Volpe,* 520 F.2d 451, 453 (D.C.Cir.1975); *Oliver v. Home Indem. Co.,* 470 F.2d 329, 330–31 (5th Cir.1972) (adopting a construction of Rule 60(b) which allows a " 'mistake' to encompass judicial mistake in applying the appropriate law" because of an alleged change in the law); *Schildhaus v. Moe,* 335 F.2d 529, 531 (2nd Cir.1964) ("[N]o good purpose is served by requiring the parties to appeal to a higher court, often requiring remand for further trial proceedings, when the trial court is equally able to correct its decision in the light of new authority on application made within the time period permitted for appeal").

Although there is a split in the circuits regarding whether a subsequent change in the law will provide a basis for Rule 60(b) relief, courts have consistently found that a Rule 60(b) motion filed before the time for filing a notice of appeal has expired may be considered by the trial court. *See, e.g., D. C. Fed'n of Civic Assocs. v. Volpe,* 520 F.2d at 453 (permitting "intervening appellate decisions to be raised within the time for appeal by motion under Rule 60(b)(1)"); *Oliver v. Home Indem. Co.,* 470 F.2d at 330 (finding that "the district court properly entertained Pruitt's motion which was filed within the period allowed for giving notice of appeal and in fact after notice of appeal had been filed"); *Schildhaus v. Moe,* 335 F.2d at 531 (confirming a prior holding that a Rule 60(b) motion may be considered when "[e]leven days after the entry of a defendant's judgment in that case, correct under the law laid down by this Court, the Supreme Court rendered a decision which showed the judgment to be erroneous" and "the plaintiff moved under Rule 60(b) ten days thereafter, within the 30–day period allowed for appeal"). In interpreting Rule 60(b), the Court of Appeals for the District of Columbia reasoned that "it is obviously sound administration for litigants to provide the District Courts with the opportunity to correct 'errors' of this sort, and to spare this court unnecessary appeals." *D. C. Fed'n of Civic Assocs. v. Volpe,* 520 F.2d at 453.

In the present case, this court entered judgment on May 1, 2001, and, therefore, the deadline for filing a notice of appeal to the United States Court of Appeals for the Federal Circuit is July 2, 2001.[2] The decision of the United States Supreme Court, *Buckhannon Board and Care, Home Inc. v. West Virginia Department of Health and Human Resources,* —— U.S. ——, 121 S.Ct. 1835, 149 L.Ed.2d 855, which, according to the defendant, renders this court's May 1, 2001 judgment erroneous, was decided on May 29, 2001. Defendant filed its RCFC 60(b) motion for relief from judgment based on the *Buckhannon* opinion on June 8, 2001, within the time required for the filing of the notice of appeal from the May 1, 2001 judgment. Because the defendant's time for filing the notice of appeal has not expired, the court finds that it may properly consider an RCFC 60(b) motion for relief from judgment based on intervening law that allegedly causes the court's prior judgment to become erroneous as a matter of law. It remains unclear whether an alleged mistake of law is properly reviewed under RCFC 60(b)(1) or RCFC 60(b)(6). The choice between the two subsections, however, will not alter the result of this order because, in the opinion of this court, based on the facts presented, the later decision of the Supreme Court does not effect a change in the governing law which compels a reconsideration of this court's May 1, 2001 judgment.

At first blush, the *Buckhannon* decision might appear difficult to distinguish from the case before this court. However, there are significant factual distinctions. This court believes that the facts presented to the Supreme Court did not provide the Court with an opportunity to address the more common scenarios presented to trial courts, especially in government contract cases, such as the one before this court. Moreover, although the Supreme Court framed the question before it broadly and offered a categorical answer, the text of Justice Rehnquist's opinion, in which Justices O'Connor, Scalia, Kennedy and Thomas joined, bolstered by Justice Scalia's concurring opinion, in which Justice Thomas joined, refined the standards for determining the application of the *Buckhannon* ruling by trial and lower appellate courts.

At the commencement of Justice Rehnquist's opinion, he wrote:

> Numerous federal statutes allow courts to award attorney's fees and costs to the "prevailing party." The question presented here is whether this term includes a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct. We hold that it does not.

*Id.* at 1839. At the close of Justice Rehnquist's opinion, he also wrote: "For the reasons stated above, we hold that the 'catalyst theory' is not a permissible basis for the award of attorney's fees under the FHAA [Federal Housing Amendments Act of 1988], 42 U.S.C. § 3613(c)(2), and ADA [Americans with Disabilities Act of 1990], 42 U.S.C. § 12205." *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Resources,* —— U.S. at ——, 121 S.Ct. at 1843.

In *Buckhannon,* the named plaintiff, which operated assisted living care homes, failed a West Virginia state inspection for violating a state law because some of the residents were incapable of "self preservation," i.e., incapable of removing themselves from dangerous situations such as a fire. *Id.* at 1838. The plaintiffs brought suit in federal court alleging that the "self-preservation" requirement violated the Fair Housing Amendments Act of 1988 (FHAA), 102 Stat. 1619, 42 U.S.C. § 3601 *et seq.,* and the Americans with Disabilities Act of 1990(ADA), 104 Stat. 327, 42 U.S.C. § 12101 *et seq. Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Resources,* —— U.S. at ——, 121 S.Ct. at 1838. While the case was pending in District Court, the West Virginia legislature enacted two bills which eliminated the "self-preservation" requirement. *Id.* The

---

**2.** Rule 4(a)(1)(B) of the Federal Rules of Appellate Procedure prescribes the deadline for the filing of a notice of appeal in this case, stating that "[w]hen the United States or its officer or agency is a party, the notice of appeal may be filed by any party within 60 days after the judgment or order appealed from is entered." Fed. R.App. P. 4(a).

respondents moved to dismiss the case as moot, which the District Court granted. *Id.* The petitioners then requested attorney's fees as the "prevailing party" pursuant to the FHAA, 42 U.S.C. § 3613(c)(2), and the ADA, 42 U.S.C. § 12205. *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Resources,* ―― U.S. at ――, 121 S.Ct. at 1838.

The holding of the court in *Buckhannon* was specifically written to apply "under the FHAA, 42 U.S.C. § 3613(c)(2), and ADA, 42 U.S.C. § 12205." *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Resources,* ―― U.S. at ――, 121 S.Ct. at 1843. The Court also noted in dicta that the "prevailing party" provisions in certain other fee-shifting statutes should be interpreted consistently and listed the Civil Rights Act of 1964, 78 Stat. 259, 42 U.S.C. § 2000e-5(k), the Voting Rights Act Amendments of 1975, 89 Stat. 402, 42 U.S.C. § 1973/(e), and the Civil Rights Attorney's Fees Awards Act of 1976, 90 Stat. 2641, 42 U.S.C. § 1988. *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Resources,* ―― U.S. at ――, 121 S.Ct. at 1839. The EAJA is not mentioned in the *Buckhannon* opinion.

Even more significant, it appears from the facts articulated by the Supreme Court in *Buckhannon* that neither the court nor the plaintiffs had a role in bringing about the resolution of the case. The West Virginia legislature, an entity not involved in the lawsuit, independently intervened to alter the relevant statutory language, which caused the case to become moot. The defendant appears not to have engaged in improper conduct, but was prepared to carry out its statutory obligations. Although according to the dissent in *Buckhannon,* the plaintiffs alleged that their lawsuit caused the statutory change, a direct causation is unlikely given the independence normally exercised by legislatures when enacting laws. Moreover, the lawsuit filed by the plaintiffs did not cause a change in the defendant's behavior; the legislative revision allowed defendants to change their actions without violating state law. Under these circumstances, a plaintiff should not be entitled to claim and receive attorney's fees under any fee-shifting provision.

After reviewing the prior holdings of the Supreme Court and the plain language of the FHAA and the ADA, the *Buckhannon* court stated that a "prevailing party" must have prevailed pursuant to a "judicially sanctioned change in the legal relationship of the parties." *Id.* at 1840. The Court also wrote that a defendant's voluntary change in conduct "lacks the necessary judicial imprimatur on the change," but that "enforceable judgments on the merits and court-ordered consent decrees create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." *Id.* (citing *Texas State Teachers Assn. v. Garland Independent School Dist.,* 489 U.S. 782, 792–93, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)). In explaining its position, the Court's opinion also cited to language in *Hanrahan v. Hampton,* 446 U.S. 754, 757, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980): " 'It seems clearly to have been the intent of Congress to permit . . . an interlocutory award only to a party who has established his entitlement to some relief on the merits of his claims, either in the *trial court* or *on appeal.*' (emphasis added)" *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Resources,* ―― U.S. at ――, 121 S.Ct. at 1840.[3] The Court further noted that a decision relied on by the petitioners, *Parham v. Southwestern Bell Telephone Co.,* 433 F.2d 421 (8th Cir.1970), was actually consistent with the court's holding in *Buckhannon* because the *Parham* court concluded that the plaintiff's lawsuit acted as a catalyst only after finding that the defendant had acted unlawfully. *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Resources,* ―― U.S. at ―― n. 9, 121 S.Ct. at 1842 n. 9.

*Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Resources,* ―― U.S. at ――, 121 S.Ct. at 1842 (citing *Key Tronic Corp. v. United States,* 511 U.S. 809, 819, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994)).

**3.** The *Buckhannon* court considered the legislative history of 42 U.S.C. § 1988 and determined that even supportive legislative history alone, which was "at best ambiguous," could not provide the "explicit statutory authority" required to shift the responsibility for fees to the loser.

Although the *Buckhannon* opinion provides guidance regarding the "prevailing party" requirement contained in certain statutes, this intervening decision does not resolve how to interpret the requirement under EAJA for awarding attorney's fees in the case before this court. The two statutes at issue in *Buckhannon* were the FHAA, 42 U.S.C. § 3613(c)(2), and the ADA, 42 U.S.C. § 12205, and the Supreme Court's holding on how to interpret the term "prevailing party" was based on interpretations of those two statutes. *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Resources,* — U.S. at —, 121 S.Ct. at 1843. The fee-shifting provision of the FHAA, in its entirety, states:

> In a civil action under subsection (a) of this section, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs. The United States shall be liable for such fees and costs to the same extent as a private person.

42 U.S.C. § 3613(c)(2). Similarly, the provision involving entitlement to attorney's fees and costs under the ADA states:

> In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs,

and the United States shall be liable for the foregoing the same as a private individual.

42 U.S.C. § 12205. These fee-shifting statutes provide broad discretion to the trial court or administrative body to determine whether a party can be considered a "prevailing party" and, if so, whether it is entitled to attorney's fees, without requiring the court or agency to consider the underlying merits of the dispute. The *Buckhannon* court also specifically listed three other statutes which have been consistently interpreted with the two statutes at issue in *Buckhannon,* but the EAJA statute was not mentioned in this list. *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Resources,* — U.S. at —, 121 S.Ct. at 1839. The three additional statutes referenced by the *Buckhannon* court contain language similar to the FHAA and the ADA fee-shifting provisions, providing the trial court with broad discretion and no requirement to review the underlying merits of the dispute.[4]

Although the statute at issue in the present case, the EAJA, 28 U.S.C. § 2412, also contains a "prevailing party" requirement, the plain language of the EAJA is significantly distinct from the language of the fee-shifting statutes examined and referenced in *Buckhannon.*[5] The fee-shifting provision in the EAJA states:

---

**4.** The attorney's fee provision in the Civil Rights Act of 1964 states:

> In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

42 U.S.C. § 2000e–5(k). In addition, the Voting Rights Act Amendments of 1975 provides: "In any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1973*l*(e). Finally, the Civil Rights Attorney's Fees Awards Act of 1976 states:

> In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318 [20 U.S.C. § 1681 *et seq.*], the Religious Freedom Restoration Act of 1993 [42

U.S.C. § 2000bb *et seq.*], title VI of the Civil Rights Act of 1964 [42 U.S.C. § 2000d *et seq.*], or section 13981 of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction.

42 U.S.C. § 1988(b) (Supp. IV 1998).

**5.** Although in its April 9, 2001 opinion, this court referred to cases examining other fee-shifting statutes to interpret the "prevailing party" requirement of the EAJA, the construction of the "prevailing party" requirement established by the majority of the Courts of Appeals at the time this court's opinion was issued, was consistent with the plain language and legislative history of the EAJA. The standards for meeting the "prevailing party" requirement recently set forth in

Except as otherwise specifically provided by statute, a court *shall* award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, *unless* the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (emphasis added). In contrast to the fee-shifting provisions examined by the *Buckhannon* court, EAJA created a statutory presumption that attorney's fee awards "shall" be made "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A); *see* H.R.Rep. No. 96–1418, at 9 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4984, 4987–88. Under EAJA, to determine whether the government's position was substantially justified, the court must analyze the law and examine the facts to determine "whether the government's overall position had a reasonable basis in both law and fact." *Chiu v. United States,* 948 F.2d 711, 715 (Fed.Cir.1991).

Unlike the EAJA, the fee-shifting statutes examined in *Buckhannon* do not establish a presumption that the prevailing party is entitled to attorney's fees, nor do these other statutes require the court to make findings that the defendant was substantially unjustified and that no special circumstances exist to make the award unjust. The Supreme Court's concerns with permitting a plaintiff to attain "prevailing party" status based on a voluntary change in the defendant's conduct should not apply to EAJA. The *Buckhannon* court criticized the "catalyst theory" because it could permit a plaintiff to recover attorney's fees if it "established that the 'complaint had sufficient merit to withstand a motion to dismiss for lack of jurisdiction or failure to state a claim on which relief may

be granted.'" *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Resources,* —— U.S. at ——, 121 S.Ct. at 1841 (citing Brief for United States as Amicus Curiae 27). The Court further explained that "[t]his is not the type of legal merit that our prior decisions, based upon plain language and congressional intent, have found necessary." *Id.* Finally, the *Buckhannon* Court refused to endorse a construction of "prevailing party" which "authorizes federal courts to award attorney's fees to a plaintiff who, by simply filing a nonfrivolous but nonetheless potentially meritless lawsuit (it will never be determined), has reached the 'sought-after destination' without obtaining judicial relief." *Id.*

■■■■ Under EAJA, a plaintiff cannot recover attorney's fees merely by showing that its complaint had sufficient merit to withstand a motion to dismiss for lack of jurisdiction or failure to state a claim on which relief may be granted. Even if a plaintiff files a nonfrivolous lawsuit, with sufficient merit to withstand a motion to dismiss, the plaintiff will not obtain an EAJA award if the government's position was "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). In an EAJA claim, the court must consider the merits of the underlying lawsuit because it must determine whether the position taken by the United States—in the civil action and by the agency upon which the civil action is based—was substantially justified. *See* 28 U.S.C. § 2412(d)(2)(D); *Comm'r Immigration & Naturalization Serv. v. Jean,* 496 U.S. 154, 158, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990); *Gavette v. Office of Pers. Mgmt.,* 808 F.2d 1456, 1467 (Fed.Cir.1986) (the position of the United States includes that taken by the agency at the administrative level). Even if there occurred a voluntary change in the conduct of the government for an EAJA claim, the court would have to assess the merits of the government's action. In the cases in which the court finds that the government's position was not substantially justified and finds the government liable to the

---

*Buckhannon* conflict with the plain language and the legislative history of the EAJA, and the court

now focuses on the distinctions between EAJA and other fee-shifting statutes.

plaintiff for EAJA fees, the finding on the merits also would have been in favor of the plaintiff, even if the case has been resolved by means other than a formal written decision by the court.[6] The "substantially justified" requirement of EAJA provides a safeguard to ensure that a plaintiff's victory had the necessary legal merit to support an award of attorney's fees. In sum, under EAJA, although a decision on the merits is not required for "prevailing party" status, a consideration of the merits during the review of the EAJA application is required.

Because the "substantially justified" analysis directs the court to consider the merits of the case underlying the EAJA application, a plaintiff cannot prove the legal merits of the case solely through the "prevailing party" requirement. Therefore, under EAJA, the term "prevailing party" must mean something different from the term "prevailing party" used in the fee-shifting provisions examined and referenced in *Buckhannon*. The "substantially justified" requirement of EAJA takes pressure off the "prevailing party" requirement because examination of the underlying case is mandated. The inquiry under the "prevailing party" examination is directed to whether the plaintiff's lawsuit actually caused the agency to provide the relief the plaintiff requested. *See Miley v. Principi*, 242 F.3d 1050, 1054 (Fed.Cir.2001)

(relying on causation to determine whether plaintiff was a "prevailing party" under EAJA). Because the plain language of the EAJA statute sets forth an additional "substantially justified" requirement in addition to the "prevailing party" requirement as well as a statutory presumption of award ("shall award to a prevailing party") that is not contained in the fee-shifting statutes examined in *Buckhannon*, the court finds that the *Buckhannon* interpretation of "prevailing party" does not resolve the fee-shifting questions raised under EAJA.[7]

■ However, even if the *Buckhannon* standards were to be applied to recovery under the EAJA, the court's May 1, 2001 judgment need not be altered because the plaintiff Brickwood factually establishes itself as the "prevailing party" by meeting the concerns described in *Buckhannon*. In the case currently before the court, three days after the Navy attempted to convert its solicitation from an IFB to an RFP, the plaintiff filed a bid protest in this court, requesting the court to enjoin the Navy from converting the IFB to an RFP. *Brickwood Contractors, Inc. v. United States*, 49 Fed.Cl. at 150.

After the court reviewed the factual and legal issues, the court held a hearing to discuss plaintiff's bid protest. At the hearing, the court stated:

6. In his concurrence, Justice Scalia identifies certain risks of endorsing and rejecting the "catalyst theory": "If the former sometimes rewards the plaintiff with a phony claim (there is no way of knowing), the latter sometimes denies fees to the plaintiff with a solid case whose adversary slinks away on the eve of judgment." *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Resources,* — U.S. at ——, 121 S.Ct. at 1847 (Scalia, J., concurring). The "substantially justified" requirement under EAJA avoids one weakness of the "catalyst theory" because if the government's position at the agency level and/or during litigation was not substantially justified, there is little chance that an EAJA award will reward the plaintiff with a phony claim. *Id.* However, without the "catalyst theory," the risk of "den[ying] fees to the plaintiff with a solid case whose adversary slinks away on the eve of judgment" could still arise in EAJA cases in the appropriate factual situation. *Id.*

7. Defendant argues that "the Supreme Court's definition of prevailing party applies to EAJA as well as the FHAA and the ADA" and cites to *Schultz v. United States*, 918 F.2d 164, 166 n. 2

(Fed.Cir.1990), to support its assertion. The court in *Schultz* analyzed the "prevailing party" requirement pursuant to a request for costs under RCFC 54(d). *Id.* at 165–66. Although the *Schultz* court cited to EAJA cases analyzing the definition of "prevailing party," the precise meaning of the "prevailing party" requirement under EAJA was not at issue in *Schultz* and was not resolved by the court. *Id.* Moreover, even if the *Schultz* ruling were extended to apply to EAJA cases, it would not support the defendant's contention that the *Buckhannon* standard applies to EAJA cases. The *Buckhannon* court distinguished the cases involving costs and the cases involving attorney's fees based on the "presumptive rule for costs" not contained in many attorney's fees statutes. *See Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Resources,* — U.S. at —— n. 8, 121 S.Ct. at 1841 n. 8. Moreover, the costs award provision relied on in *Schultz*, RCFC 54(d), does not contain a requirement to review the merits of the underlying government actions and positions.

[I]t is a one-issue case and it is going to be up to me to decide whether or not the decision [to convert] and the procedures invoked in making that change were arbitrary and capricious or not.... and in the package that I had, I found no basis for the change that was made, so that if I get nothing further in terms of information, I will make a finding of arbitrary and capricious.

At the hearing, the defendant explained that the government's sole basis for the attempted conversion to an RFP was to solicit bids reflecting a deletion of the PCB testing requirements which had become unnecessary.[8] The court seriously questioned the defendant regarding whether the Navy had any evidence of a justification which would permit the conversion from an IFB to an RFP:

THE COURT: ... I gather there's some PCB work still left to be done. Is that correct or not?

MR. FAVER [Defendant's counsel]: No, there's no—

THE COURT: So, it gets eliminated.... Okay, if you eliminated that—why did you go to a negotiated procurement? It's just a strange choice....

MR. FAVER: I'm not too sure that that could have been easily done and reached the same and fair result that the negotiated procurement may result in. The bids have been opened, they have been reviewed by the—presumably by the other bidders.

THE COURT: ... [C]learly the fairest is, cancel it, go back, do another sealed. That's the easiest answer.

MR. FAVER: But perhaps not the most efficient under the given circumstances, which is why the FAR provides for this option, an alternative for converting to the RFP—

THE COURT: But it provides for the alternative with a very strong presumption that it's a rarity not to be gone to without good justification. And at least in this

record so far, there is no justification. But granted, so far the record has been compiled by the Plaintiff. So, tell me what it is—what document—is there a contemporaneous document to when this occurred?

MR. FAVER: Not that I know of yet, Judge, I'm sorry.

THE COURT: You did ask that question, I am sure.

MR. FAVER: I'm not too sure. We were trying to really learn of the factual background and just find out who did what when and the like. But to my knowledge there is—when you say contemporaneous, meaning—

THE COURT: Justification, written justification.

MR. FAVER: For the decision to—

THE COURT: To go to a negotiated procurement and issue that amendment.... In other words, it doesn't say why. It just says, here's how we're doing it.

MR. FAVER: I know there's a lot of writings I haven't had a chance to receive or review. Whether or not any of those particular writings address that particular issue, I do not know as yet.

In this exchange, the court, although it did not issue a written opinion, announced its acknowledgment of the merits of plaintiff's claims, the rectitude of plaintiff's position and the error of defendant's actions. Defendant's counsel subsequently announced that the Navy had decided to postpone the opening of the proposals by one week to July 1, 1999 to allow counsel to discuss the issues further with each other and with their respective clients in order to see whether the protest could be resolved efficiently. On July 16, 1999, the defendant issued Amendment 0009, by which the government cancelled the solicitation, with the intention of offering a new IFB, this time without options and without a requirement for PCB testing. That same day, the defendant filed a motion to dismiss in this court stating that:

---

**8.** The defendant explained the basis for the Navy's attempted conversion in the following exchange:

THE COURT: Mr. Faver, is it in fact accurate for Plaintiff to describe your basis as wholly the PCB issue—
MR. FAVER [Defendant's counsel]: Yes, Your Honor.

At the hearing on the plaintiff's motion for a temporary restraining order, the Court seriously questioned the decision to convert to a negotiated procurement and suggested that canceling the solicitation and re-soliciting using another sealed bid is the fairest and easiest way to proceed. After further consideration of both the circumstances surrounding the solicitation and the governing FAR provisions, and in light of the Court's comments at the TRO hearing, the Navy has canceled the solicitation and plans to re-solicit using a new IFB.

On July 22, 1999, in its order dismissing the case, the court noted that "the Department of the Navy canceled the solicitation that is the subject of this action" and dismissed plaintiff's protest. Although the court did not issue a written opinion on July 22, 1999, with a finding that the Navy had acted unlawfully, the court's comments at the TRO hearing represent the necessary "judicial imprimatur" that caused the change in the legal relationship of the parties. Based on the court's review of the documents related to the solicitation, the court clearly stated that it found "no basis" for the Navy's attempted conversion. The court also stated that a solution to dealing with the unnecessary PCB requirement would be to "cancel it, go back, do another sealed" and that "in this record so far, there is no justification" for the attempted conversion. In response to the court's request to provide a justification sufficient to support the government's decision to convert to an IFB, counsel for defendant was unable to provide one. The court's remarks clearly signaled that it intended to find that the Navy had acted arbitrarily and capriciously and to rule in favor of the plaintiff if the Navy could not produce evidence showing that it had a sufficient justification for the attempted conversion. After the defendant had an opportunity to review its documents, the defendant announced that it intended to follow the court's suggestion of canceling the original IFB and resoliciting another IFB. The defendant admitted that the Navy had decided to cancel the IFB "in light of the Court's comments." Moreover, the Navy had not produced any additional documentation at the hearing or even after the administrative record was compiled for the EAJA application that demonstrated a justification sufficient to support a conversion from an IFB to an RFP. Thus, the court's remarks at the TRO hearing amounted to a finding that the Navy had acted unlawfully, and the defendant's change in conduct was a product of judicial action in the lawsuit.

As a trial court, this court is of the strong opinion that to interpret *Buckhannon* as requiring formal written judgments on the merits or formal findings of unlawful conduct will inhibit settlements and discourage parties from taking self-corrective action such as that taken by the defendant in *Brickwood.* Plaintiffs may be required to engage in protracted court proceedings and insist on written opinions in every action brought against the government, even when the merits of the plaintiff's claims are clear. The purpose of EAJA is to provide access to the courts to small businesses and individuals for review of or to defend against unreasonable government action without inhibition. *See* H.R. Rep. 96–1418, at 5, 1980 U.S.C.C.A.N. at 4984. When the federal government perceives that an employee or organization has taken inappropriate action, it has a duty to institute immediate remedial action without further imposing on the citizenry. Moreover, in government contract cases, such as the one currently before the court, the goal of promptly resolving a contract dispute, especially in pre-award cases, could be seriously impacted if the government feels it must balance the threat of even modest attorney's fees, as in the present case, against quickly resolving the dispute and issuing corrective action. Despite the absence of a written finding, because the court's actions altered the legal relationship of the parties, the court finds that the plaintiff in *Brickwood* is entitled to attorney's fees under EAJA.

## CONCLUSION

For the foregoing reasons, the court finds that this court may properly consider an RCFC 60(b) motion for relief from judgment based on an alleged mistake of law. The court also finds that the discussion by the United States Supreme Court in *Buckhannon Board and Care Home, Inc. v. West*

*Virginia Department of Health and Human Resources,* —— U.S. ——, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), should not bar recovery by the plaintiff Brickwood in the case before the court. Plaintiff, therefore, is entitled to the award of attorneys' fees and costs previously awarded by this court in its May 1, 2001 judgment. The defendant's motion for relief from judgment is **DENIED.**

**IT IS SO ORDERED.**