**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NADA BAKOS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 18-743 (RMC) |
| | ) |
| CENTRAL INTELLIGENCE AGENCY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OPINION**

Nada Bakos, a former analyst for the Central Intelligence Agency (CIA), finished a manuscript for a book about her life as a CIA operative in October 2015. "The Manuscript reveals the inner workings of the Agency and the largely hidden world of intelligence gathering post 9/11." Compl. [Dkt. 1] ¶ 6. Pursuant to CIA policy, she submitted her manuscript to the CIA Publication Review Board (Board) for redaction of classified material. *Id.* ¶¶ 5, 11-12. Over the course of two years, the Board, in consultation with the Department of Defense (DoD) and other interested agencies, evaluated that manuscript. *Id.* ¶ 7. In August 2017, the Board notified Ms. Bakos that it had completed its review and that certain material in the manuscript had to be removed prior to publication. Ex. 1, Board Review Letter (Aug. 2, 2017) [Dkt. 15-1] at 1. Ms. Bakos sought an in-person meeting to discuss the proposed redactions, but was informed that while the CIA was willing, the other agencies did not meet with authors "as part of their standard process." Ex. A, Board Review Email (Dec. 12, 2017) [Dkt. 17-1] at 1. Apparently frustrated with the process, Ms. Bakos filed suit in April 2018. *See* Compl.

In response, the CIA offered to convene a meeting with the relevant stakeholders, all of whom were now willing to negotiate with Ms. Bakos. Mem. of P. & A. in Opp'n to Pl.'s

1

Mot. for Att'y's Fees & Costs. (Opp'n) [Dkt. 17] at 3. This Court granted the CIA a series of extensions to answer the Complaint so that the parties could resolve the issues on their own. *See* 06/06/2018 Min. Order; 09/06/2018 Min. Order; 09/27/2018 Min. Order. Accordingly, the parties held meetings and exchanged drafts and by the end of September 2018 the government determined that, subject to a few remaining redactions, Ms. Bakos' re-writes had sufficiently obscured any classified information in her manuscript. *See* Ex. 2, Board Review Letter (Sept. 7, 2018) [Dkt. 15-2]; Ex. 3, DoD Review Letter (Sept. 26, 2018) [Dkt. 15-3]; Ex. 4, Board Review Letter (Sept. 27, 2018) [Dkt. 15-4]. Satisfied with the remaining redactions, and having reached an amicable resolution, the parties filed a joint motion to excuse the CIA from answering the Complaint and to set a briefing schedule for Ms. Bakos to file an application for attorney's fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1)(A). *See* Joint Mot. for Briefing Schedule on Atty's Fees & Costs (Joint Mot.) [Dkt. 13]. That briefing is now ripe.[1]

## I. LEGAL STANDARD

The American rule is that parties must bear their own attorney's fees unless a statute or contract explicitly authorizes fee-shifting. *Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939, 952 (D.C. Cir. 2005). The EAJA is one such statute and provides that a court "shall award to a *prevailing party* other than the United States fees and other expenses . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A) (emphasis added).

In *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. 598 (2001), the Supreme Court held that a party is only

---

[1] *See* Pl.'s Mot. for Att'y Fees & Costs (Pl.'s Mot.) [Dkt. 15]; Opp'n; Pl.'s Reply in Supp. of Mot. for Att'y's Fees & Costs [Dkt. 19].

a prevailing party if there has been a "material alteration of the legal relationship of the parties." *Id.* at 604 (quoting *Tex. State Teachers Ass'n v. Garland Indep. School Dist.*, 489 U.S. 782, 792-93 (1989)). Although *Buckhannon* was decided in the context of the Fair Housing Act and Americans with Disabilities Act, the D.C. Circuit has relied on *Buckhannon* to articulate a generally applicable three-part test for determining whether a party is a prevailing party for fee-shifting purposes: "(1) there must be a 'court-ordered change in the legal relationship' of the parties; (2) the judgment must be in favor of the party seeking the fees; and (3) the judicial pronouncement must be accompanied by judicial relief." *District of Columbia v. Straus*, 590 F.3d 898, 901 (D.C. Cir. 2010) (quoting *Thomas v. Nat'l Sci. Found.*, 330 F.3d 486, 492-93 (D.C. Cir. 2003)). This standard has been applied to other fee-shifting statutes which share identical—or even merely comparable—language,[2] and it is "now clear" that this standard "also applies to fee claims arising under EAJA." *Select Milk*, 400 F.3d at 945.

## II.    ANALYSIS

### A.  Ms. Bakos Does Not Satisfy the *Buckhannon* Standard

Ms. Bakos argues that the Court's acceptance of the Parties' voluntary stipulation is the "legal and functional equivalent" of a dismissal with prejudice and therefore satisfies *Buckhannon*. Pl.'s Mot. at 6 (citing *Green Aviation Mgmt. Co. v. FAA*, 676 F.3d 200, 205 (D.C. Cir. 2012)). This argument is unsuccessful for two reasons.

*First*, the Court's acceptance of the Parties' joint stipulation does not provide judicial relief. When testing purported relief against *Buckhannon*, the germane inquiry is

---

[2] *See, e.g.*, *Oil, Chem. & Atomic Workers Int'l Union, AFL-CIO v. Dep't of Energy*, 288 F.3d 452, 455 (D.C. Cir. 2002) (applying the standard to FOIA), *superseded by statute* OPEN Government Act of 2007, 5 U.S.C. § 552(a)(4)(E)(ii); *Alegria v. District of Columbia*, 391 F.3d 262, 264 (D.C. Cir. 2004) (applying the standard to the Individuals with Disabilities Education Act).

whether a party was afforded "*judicial* relief that materially altered the rights of the parties." *Oil, Chem. & Atomic Workers*, 288 F.3d at 458 (quotations omitted) (emphasis added). Thus, judgment on the merits (a "*judicial* pronouncement" that a party is entitled to relief) and binding consent decrees enforced *by the court* (which afford a party new rights or obligate some future action) are properly classified as judicial relief. *See Buckhannon*, 532 U.S. at 600, 606 (emphasis added). But plaintiffs may "dismiss an action *without a court order* by filing . . . a notice of dismissal before the opposing party serves . . . an answer." Fed. R. Civ. P. 41(a)(1)(A)(i) (emphasis added); *see also id.* at 41(a)(1)(A)(ii) (permitting dismissal without a court order upon "a stipulation of dismissal signed by all parties who have appeared"); *cf. id.* at 41(a)(1)(B) ("Unless the notice or stipulation states otherwise, the dismissal is without prejudice."). When that happens, a court's acceptance of the parties' voluntary dismissal is "merely a formality," "properly viewed as a procedural ruling that cannot serve as the basis for a determination that [a party] prevailed." *Oil, Chem. & Atomic Workers*, 288 F.3d at 45-58. So too here: the Court made no decision on the merits and imposed no obligations on the parties; rather, the parties themselves withdrew this case from consideration of the merits. Without action by the Court, there is no *judicial* relief.

     *Second*, even if the Court's acceptance of the parties' joint stipulation were equivalent to a dismissal with prejudice, the Court could not say that Ms. Bakos had prevailed. To be sure, a dismissal with prejudice may sometimes satisfy *Buckhannon*. For example, in *Green Aviation Management Co. v. FAA*, 676 F.3d 200, the D.C. Circuit found that dismissal with prejudice of the FAA's civil penalty case against the defendant was judicial relief, both because a court order was necessary—by regulation—to dismiss the case, and more importantly because the dismissal with prejudice provided the defendant *res judicata* protection from similar

lawsuits brought by the FAA. *Id.* at 205. But here, Ms. Bakos' situation is reversed. Because she is the plaintiff, her voluntarily dismissal of her Complaint with prejudice relieved her *opponent* of potential liability and precludes *her* from bringing further proceedings. Thus, whatever relief came with the Court's order, it was not in Ms. Bakos' favor.

Ms. Bakos further argues that she is the prevailing party because her litigation induced the government to negotiate on the redactions, which was her desired outcome. *See* Pl.'s Mot. at 3-4. However, this same argument has been squarely rejected by the Supreme Court. Specifically, the plaintiffs in *Buckhannon*, as here, "argued that they were entitled to attorney's fees under the 'catalyst theory,' which posits that a plaintiff is a 'prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Buckhannon*, 532 U.S. at 601. The Supreme Court rejected the argument, holding that "the 'catalyst theory' falls on the other side of the line from" "the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." *Id.* at 604-05 (quoting *Tex. State Teachers Ass'n*, 489 U.S. at 792-93). The government's voluntary change in position, even if induced by litigation, is not tantamount to a court-ordered change in the parties' legal relationship and is not "the type of legal merit that . . . plain language and congressional intent[] have found necessary." *Buckhannon*, 532 U.S. at 605.

### B. There Is No Good Reason to Depart from *Buckhannon* Standard

In the alternative, Ms. Bakos contends that this is a case of "limited first impression" and that there is a good reason for this Court to depart from the *Buckhannon* standard here. Pl.'s Mot. at 5-6. She relies on D.C. Circuit caselaw to the effect that a court may deviate from the *Buckhannon* standard where there is "good reason" to do so. *See Oil, Chem. & Atomic Workers*, 288 F.3d at 455 ("[E]ligibility for an award of attorney's fees . . . should be treated the same as eligibility determinations made under other fee-shifting statutes unless there

5

is some good reason for doing otherwise.").  Ms. Bakos argues that such good reason exists here because allowing the government to escape attorney's fees by settling cases before final judgment will discourage future litigants from negotiating and settling disputes.  Pl.'s Mot. at 7.

Ms. Bakos misstates the "good reason" carve-out.  In the several cases in which the D.C. Circuit has had the opportunity to consider the exemption, the Circuit did not evaluate the claims based on the circumstances of the parties or as a matter of policy but construed the fee-shifting statutes under which relief was sought.  *See, e.g.*, *Oil, Chem. & Atomic Workers*, 288 F.3d at 454-55 (evaluating, as a matter of statutory construction, whether there was a difference between "prevailing party" and "substantially prevailed").  This focus on statutory construction is consistent with *Buckhannon*'s statement that "Congress employed the term 'prevailing party'" as a legal term of art meant to limit awards to parties "'in whose favor a judgment is rendered.'" *Buckhannon*, 532 U.S. at 603 (quoting Black's Law Dictionary 1145 (7th ed. 1999)). *Buckhannon* specified that absent clear congressional intent to the contrary, "respect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail."  *Id.* (quoting *Hewitt v. Helms*, 482 U.S. 755, 760 (1987)).  "To disregard the clear legislative language and the holdings of our prior cases on the basis of such policy arguments would be a[n] . . . assumption of . . . 'roving authority.'"  *Id.* at 610 (quoting *Alyeska Pipeline Servs. Co. v. Wilderness Soc'y*, 421 U.S. 240, 260 (1975)).  The D.C. Circuit has declined to adopt such "roving authority."  Rather, based on the statutory text, "it is now clear that *Buckhannon*'s construction of 'prevailing party' also applies to fee claims arising under EAJA."  *Select Milk*, 400 F.3d at 945.[3]

---

[3] Not only are policy arguments generally unavailing in the face of clear congressional language, the D.C. Circuit has already rejected the policy argument upon which Ms. Bakos relies.  *See*

## III.   CONCLUSION

For reasons stated above, Ms. Bakos' Motion for Attorney's Fees and Costs, Dkt. 15, will be denied.  A memorializing Order accompanies this Memorandum Opinion.


Date:  August 8, 2019

_____
ROSEMARY M. COLLYER
United States District Judge

---

*Alegria*, 391 F.3d at 266 ("To the extent that the absence of such awards may discourage representation or settlement, such effects are insufficient to overcome the presumption established by *Buckhannon*.").