# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| JONATHAN RUDENBERG, | ) |
| | )    C.A. No. N16A-02-006 RRC |
| Petitioner Below, Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| THE CHIEF DEPUTY ATTORNEY | ) |
| GENERAL OF THE DEPARTMENT | ) |
| OF JUSTICE AND THE DELAWARE | ) |
| DEPARTMENT OF SAFETY AND | ) |
| HOMELAND SECURITY, DIVISION | ) |
| OF STATE POLICE, | ) |
| | ) |
| | ) |
| Respondents Below, Appellees. | ) |
| | ) |

Submitted: September 8, 2017
Decided: December 8, 2017
Corrected: January 19, 2018

On Appellant's Motion for Attorney Fees and Costs. **DENIED.**

# <u>MEMORANDUM OPINION</u>

Ryan Tack-Hooper, Esquire and Richard H. Morse, Esquire, American Civil Liberties Union Foundation of Delaware, Inc., Wilmington, Delaware, Attorneys for Appellant Jonathan Rudenberg.

Joseph C. Handlon, Esquire, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware, Attorney for Appellee the Chief Deputy Attorney General of the Delaware Department of Justice.

Patricia A. Davis, Esquire and Rae M. Mims, Esquire, Deputy Attorneys General, Delaware Department of Justice, Dover, Delaware, Attorneys for Appellee Delaware Department of Safety and Homeland Security, Division of State Police.

1

COOCH, R.J.

# I. INTRODUCTION

Before this Court is a motion for attorney fees and costs by Jonathan Rudenberg ("Appellant") stemming from his 2015 Delaware Freedom of Information Act ("FOIA") request to the Delaware Department of Safety and Homeland Security, Division of State Police ("DSP"). Appellant sought numerous documents related to the use of cell site simulator devices, known as "Stingrays," from DSP.[1] DSP did not produce the documents, relying on a nondisclosure agreement between DSP and the Federal Bureau of Investigation ("FBI"). Appellant appealed the non-production to the Chief Deputy Attorney General ("CDAG") to determine if a FOIA violation had occurred. The CDAG did not expressly find either that a FOIA violation had, or had not occurred, but rather found that the FBI nondisclosure agreement was a public record. She ordered DSP to provide Appellant with a copy of the agreement along with redacted purchase orders.

Appellant then appealed the CDAG's decision to this Court. Following briefing and oral argument on the substantive appeal, Appellant ultimately agreed to withdraw his appeal in exchange for DSP's previous production of "additional explanations of the nature of the search conducted as to each category of the request, as well as additional responsive documents including an additional non-disclosure agreement and three applications for court orders and resulting court orders."[2]

Appellant now seeks recovery of attorney fees and costs pursuant to Delaware's FOIA statute at 29 *Del. C.* § 10005(d) because, he argues, he is a "successful plaintiff." 29 *Del. C.* § 10005(d) provides that "[t]he court *may* award attorney fees and costs to a successful plaintiff of any action brought under this section." (Emphasis added).

The issue raised in this case is whether a plaintiff in an appeal on the record in an administrative appeal of a decision by the CDAG pursuant to 29 *Del. C.* § 10005(e), who during the pendency of the appeal has prevailed on a *de minimis* portion of his original FOIA request, is a "successful plaintiff" and ought to be

---

[1] *Rudenberg v. Chief Deputy Attorney Gen. of Delaware Dep't of Justice, et al*, 2016 WL 7494900, at *1 (Del. Super. Ct. Dec. 30, 2016).
[2] Agreement and Order, May 4, 2017 at 2.

awarded attorney fees and costs, pursuant to the Court's discretion, under 29 *Del. C.* § 10005(d).[3]

As a threshold matter, this Court finds that Appellant, although achieving a *de minimis* portion of success, is not truly a "successful plaintiff" under the statute. Moreover, an award of attorney fees and costs under § 10005(d) is a matter of discretion of this Court. As such, this Court, in the exercise of its discretion, finds that the award of attorney fees and costs in this case is not warranted.

Appellant is only seeking fees and costs against DSP and not against the CDAG unless "the Chief Deputy is implicated by the State Police or the Court as having responsibility for some portion of the fees and costs."[4]

## II. PROCEDURAL HISTORY AND FACTS

On May 15, 2015, Appellant, apparently then a "Delaware small business owner and security researcher,"[5] made a Delaware FOIA request to the Delaware State Police ("DSP").[6] Appellant sought nine categories of documents.[7] Appellant's specific request reads *in toto*:

> A) Records regarding the State Police's acquisition of cell site simulators, including invoices, purchase orders, contracts, loan agreements, solicitation letters, correspondence with companies providing the devices, and similar documents. In

---

[3] This Court need not reach other types of actions contemplated by 29 *Del. C.* § 10005 other than that presently at issue here.

[4] Appellant's Letter to the Court, July 12, 2017:

> After further discussion with Respondents, Petitioner, by stipulation of all parties, seeks voluntary dismissal without prejudice of his claim as to fees and costs with respect to the Chief Deputy Attorney General (while proceeding with his claim against the State Police). Petitioner would re-file that claim only in the event that the Chief Deputy is implicated by the State Police or the Court as having responsibility for some portion of the fees and costs.

*See also Rudenberg v. Delaware Department of Justice, et al*, Del. Super., C.A. No. N16A-02-006, Cooch, R.J. (Jul. 21, 2017) (ORDER) (dismissing without opposition by any party Appellant's claim against the CDAG for fees and costs).

[5] Appellant's Op. Br. at. 4.

[6] Appellee's Resp. at 1.

[7] *Id.*

response to this request, please include records of all contracts, agreements and communications with Harris Corporation.

B) Records regarding any arrangements or agreements between the State Police and other law enforcement agencies in Delaware to share the use of cell site simulators, or any offers by the State Police to share the use of cell site simulators with other law enforcement agencies in Delaware.

C) All requests by the Harris Corporation or any other corporation or any state or federal agencies, to the State Police to keep confidential any aspect of the State Police's possession and use of cell site simulators, including any nondisclosure agreements between the State Police and the Harris Corporation and any other corporation, or any state or federal agencies, regarding State Police's possession and use of cell site simulators.

D) Policies and guidelines of the State Police governing use of cell site simulators, including restrictions on when, where, how and against whom they may be used, limitations on retention and use of collected data, guidance on when a warrant or other legal process must be obtained, and rules governing when the existence and use of cell site simulators may be revealed to the public, criminal defendants, or judges.

E) Any communications or agreement between the State Police and wireless service providers (including AT&T, T-Mobile, Verizon, Sprint Nextel, and U.S. Cellular) concerning use of site simulators.

F) Any communications, licenses, or agreements between the State Police and the Federal Communications Commission or the Delaware Public Service Commission concerning use of cell site simulators.

G) Records reflecting the number of investigations in which cell site simulators were used by the State Police or in which cell site simulators owned by the State Police were used and the number of those investigations that have resulted in prosecutions.

H) Records reflecting a list of all cases, with docket numbers if available, in which cell site simulators were used as part of the underlying investigation 3 by the State Police or in which cell site simulators owned by the State Police were used as part of the underlying investigation.

I) All applications submitted to state or federal courts for search warrants or orders authorizing use of cell site simulators by the State Police in criminal investigations or authorizing use of cell site simulators owned by the State Police in criminal investigations, as well as any warrants or orders, denials of warrants or orders and returns of warrants associated with those applications. If any responsive records are

sealed, please provide documents sufficient to identify the court, date and docket number for each sealed document.[8]

On June 5, 2015, DSP denied Appellant's FOIA request in reliance upon a nondisclosure agreement with the FBI.[9] Appellant appealed this denial to the CDAG pursuant to 29 *Del. C.* § 10005(e) on June 17, 2015.[10] On, December 29, 2015, the CDAG issued a decision "order[ing] [DSP] to produce the Federal Bureau of Investigation nondisclosure agreement and acknowledg[ing] [DSP's] agreement to produce certain redacted purchase orders, but [] not compell[ing] the production of any other responsive records."[11] Appellant appealed the CDAG's decision to this Court.[12]

On September 28, 2016, Counsel in the Civil Division, Federal Programs Branch of the United States Department of Justice filed a "Statement of Interest of the United States" pursuant to 28 U.S.C. § 517.[13] The Statement of Interest essentially aligned the United States Department of Justice with DSP by asserting its interest in keeping the information requested by Appellant confidential.[14] On December 30, 2016, this Court issued an opinion addressing "to what extent [the Court] should consider the Statement of Interest, including its new facts, in connection with the underlying appeal which is required to be "'on the record.'"[15] This Court held that new facts raised by the Statement of Interest could not be considered as a FOIA appeal is "on the record."[16]

This Court heard oral argument on the substantive appeal on February 27, 2016.[17] At that time, the Court directed the parties to meet and confer to narrow and

---

[8] Appellant's Notice of Appeal at 2-3.
[9] *Id.* at 3.
[10] Appellee's Resp. at 1.
[11] Agreement and Order, May 4, 2017 at 2.
[12] Appellee's Resp. at 1.
[13] *Rudenberg*, 2016 WL 7494900, at *4

> The Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States.

[14] *Id.*
[15] *Id.* at *1.
[16] *Id.*
[17] Appellee's Resp. at 1-2.

refine the numerous issues raised in the substantive appeal.[18] However, on May 4, 2017, the parties submitted to the Court an Agreement and Order, which set out certain narrow stipulations and agreements of the parties, and where Appellant agreed to dismiss his appeal.[19] The Agreement and Order provides:

> WHEREAS, on May 15, 2015, Jonathan Rudenberg ("Appellant") submitted a Freedom of Information Act request, pursuant to 29 Del. C. § 10003, to the Delaware Department of Safety and Homeland Security, Division of State Police ("State Police" or "Appellee");
>
> WHEREAS, on June 5, 2015, the State Police denied the FOIA request in its entirety, citing a nondisclosure agreement they had entered with the Federal Bureau of Investigation;
>
> WHEREAS, on June 17, 2015, Appellant filed a petition challenging the denial with the Chief Deputy Attorney General ("CDAG" or "Appellee") pursuant to 29 Del. C. § 10005(e) as described in 29 Del. C. § 10005(b);
>
> WHEREAS, on December 29, 2015, the CDAG ordered the State Police to produce the Federal Bureau of Investigation nondisclosure agreement and acknowledged the State Police's agreement to produce certain redacted purchase orders, but did not compel the production of any other responsive records;
>
> WHEREAS, on February 26, 2016, Appellant filed a Notice of Appeal from the decision of the CDAG, alleging, among other things, that Appellant was entitled to an explanation of the nature of the search conducted as to each category of the request, additional production of responsive records, and a declaration concerning the procedure that must be followed in proceeding before the CDAG;
>
> WHEREAS, since filing the Notice of Appeal, the State Police have provided additional explanations of the nature of the search conducted as to each category of the request, as well as additional responsive documents including an additional non-disclosure agreement and three applications for court orders and resulting court orders. The State Police have not provided the model names of the cell site simulators purchased as Appellant requested; the number of investigations in which cell site simulators were used, the number of those investigations that resulted in prosecution as Appellant requested; a list of all cases in which cell site simulators were used as part of the underlying investigation as Appellant requested; or all applications submitted to State or Federal Courts for search warrants or orders, denials of warrants or orders, or returns of warrants returned with all applications authorizing the use of cell site simulators as Appellant requested;

---

[18] *Id.* at 2.
[19] *Id.*

WHEREAS, these additional explanations and production have resolved many of the disputes between the parties;

WHEREAS, the principal remaining dispute concerns the process due to a petitioner who appeals to the CDAG;

WHEREAS, the parties recognize that the process due to a petitioner who appeals to the CDAG depends, in part, on the availability of *de novo* suit in the Superior Court that is separate from any appeal from the decision of the CDAG;

WHEREAS, the parties, without conceding any infirmity in the claims or defenses, have in good faith negotiated the terms of this Stipulation and Order in order to resolve this remaining issue to their mutual satisfaction;

NOW, THEREFORE, AND SUBJECT TO APPROVAL OF THE COURT, IT IS HEREBY STIPULATED AND AGREED by and between the parties, as follows:

A. Agreement as to FOIA Procedure. The Parties agree: that the 2010 amendments to Delaware FOIA created a screening procedure that must be completed by a FOIA petitioner seeking records from an agency represented by the Attorney General of Delaware; however, this procedure and the potential appeal from it do not displace a petitioner's right to file "suit" under 29 Del. C. § 10005(b); a petitioner seeking records from an agency represented by the Attorney General may file the same type of suit under § 10005(b) that they were able to file before the FOIA amendments and that they continue to be able to file with respect to agencies not represented by the Attorney General; as described in the relevant statutory sections, the petitioner or public agency "may" choose to appeal the CDAG's decision and rely on the record created before the CDAG, but "[t]he citizen shall have the absolute right" to file a separate lawsuit after complying with the statutory requirements of §§ 10005(b) & (e); in sum, there is an optional "appeal" of the CDAG's decision described in §§ 10005(b) & (e) that is limited to the record and is distinct from the "suit" described in §§ 10005(b) & (e) that remains available to all FOIA petitioners. The Court expresses no view as to the parties' "agreement" in this paragraph.

B. Attorney Fees and Costs. Appellant shall file any motion for attorney's fees and costs within 45 days of the Effective Date. By entering into this Agreement and Order, Appellees do not concede that Appellant is a prevailing or successful party or is otherwise entitled to fees and costs in any amount and they therefore reserve the right to raise any and all defenses to a claim for fees and costs.

C. Dismissal. Following this Court's decision on any motion for attorney's fees and costs, the above-captioned lawsuit shall then be dismissed.

D. Release. Except as otherwise indicated in this Agreement and Order (including in particular Part B "Attorney Fees and Costs" supra), Appellant

7

hereby unconditionally releases and forever discharges the Appellees and their officers, agents, employees, former employees, attorneys, and vendors from any and all claims, demands, actions, causes of action, and suits, at law, in equity or otherwise, attorneys' fees, costs, obligations, damages, and liabilities of every kind, nature and description whatsoever asserted in the above-captioned action, whether individual or derivative, state or federal, which Appellant, has, had or which it hereinafter can, shall or may have for, upon or by reason of facts, conditions and events described in the pleadings in this action. Notwithstanding the foregoing, Appellant does not release his legal right to seek any and all public records in the future with new FOIA petitions.

E. No admission of wrongdoing. Appellees' stipulation to this Agreement and Order does not constitute and shall not be construed or interpreted as an admission of any wrongdoing or liability by any party.[20]

Appellant moved to recover attorney fees and costs on June 21, 2017 within 45 days pursuant to section B of the Agreement and Order.[21]

## III. THE PARTIES' CONTENTIONS

### A. Appellant's Contentions

First, Appellant seeks to recover attorney fees and costs pursuant to 29 *Del. C.* § 10005(d).[22] Appellant contends that, because this "court may award attorney fees and costs to a successful plaintiff of any action brought under" § 10005(d), he is entitled to fees because he was "successful."[23] Appellant argues that he is a "successful plaintiff" because "[p]rior to the litigation, [Appellees] refused to produce responsive documents[.]"[24] However, "[o]nce suit was filed . . . [t]he Court, after hearing oral argument on the merits, ordered the parties to attempt to meet and confer to resolve issues and to produce stipulations outlining any remaining issues."[25] Appellant contends that it was at that point that "[DSP] agree[d] to a further search for responsive records (finding and producing one) as well as to produce the key documents (court applications and orders)."[26]

---

[20] Agreement and Order, May 4, 2017.
[21] Appellant's Mot.
[22] *Id.*
[23] *Id.* at 1-2.
[24] *Id.* at 2.
[25] *Id.*
[26] *Id.* (footnote omitted).

8

Appellant also contends that "[b]ecause these documents answered [Appellant's] most important questions . . . and because [DSP] had finally explained the nature of their searches . . . [Appellant] agreed to resolve the litigation over the records upon receipt of these additional documents."[27] Appellant's argument is that he was "'successful' because he obtained the foregoing as a result of pursuing this action."[28] Appellant contends that "the parties' voluntary resolution of the matter [should not] impact the fees claim."[29] What Appellant essentially argues is that "[t]he measure of whether a party is successful turns on whether the litigation brought about positive results and changes in legal position among the parties[.]"[30]

Second, Appellant initially argued that "[b]ecause the denial of public records to [Appellant] was the result of errors made by both [DSP] and the CDAG, the judgment of fees should apply jointly to both [Appellees]."[31] However, in a July 12, 2017 letter to the Court, Appellant withdrew his claim against the CDAG.[32] DSP in this administrative appeal has been the only real adversary to Appellant.

Finally, Appellant contends that a reasonable award of fees should be determined by the "lodestar" amount.[33] Appellant asserts that the number of hours at the Appellant's attorneys' rates results in a lodestar amount $60,737.50.[34] Appellant seeks an award of $60,737.50 in attorney fees, in addition to costs of $420.88.[35]

B.    DSP's Contentions[36]

---

[27] Id. at 3.

[28] Id.

[29] Id. at 4.

[30] Id.

[31] Id. at 5.

[32] Appellant's Letter to the Court, July 12, 2017.

[33] Appellant's Mot. at 6.

[34] Id. at 7.

[35] Id.

[36] See Chief Deputy Attorney General's Letter to the Court, May 26, 2016:
> On behalf of the Chief Deputy Attorney General (CDAG), and subject to any request of Your Honor to the contrary, we write to inform the Court that the CDAG does not intend to file an answering brief or otherwise participate in this appeal. The CDAG decided the underlying matter on the merits, and the Appellant primarily raises challenges to the substantive decision of the CDAG. The "adverse interests" in this matter are between the Appellant and [DSP].

Appellee ("DSP") argues that Appellant ought not to be awarded any attorney fees and costs 29 *Del. C.* § 10005(d) because the language of the statute only supports an attorney fees and costs award to "a party [who] is 'successful' [in a] lawsuit."[37] DSP points out that Appellant here was unsuccessful in an administrative appeal, not a lawsuit, and should therefore not recover fees under 29 *Del. C.* § 10005(d).[38] DSP argues that the "successful plaintiff" language of 29 *Del. C.* § 10005(d) "does not support an award of fees and costs against a party who was unsuccessful in the administrative appeal discussed in subsection (e)."[39]

DSP also contends that "Appellant has not been 'successful' in his appeal [because he] voluntarily withdrew his complaint with this Court . . . after receiving documents different than those originally requested."[40] DSP thus urges this Court to follow the United State Supreme Court's 2001 decision in *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, which "held [as a matter of federal law that] a prevailing party entitled to attorney fees and costs 'does not include a party that failed to secure a judgment on the merits or court-ordered consent decrees but nonetheless achieved a desired result because the lawsuit brought a voluntary change in defendant's conduct.'"[41] DSP also distinguishes

---

[37] Appellee's Resp. at 3 (emphasis omitted).

[38] *Id.*

[39] *Id.* (emphasis omitted); This Court need not reach the statutory interpretation issue of whether an appellant is a "plaintiff," or whether an administrative appeal is included under "any action" pursuant to § 10005(d). This Court in *Flowers v. Office of the Governor* also did not reach this issue. 167 A.3d 530, 541 (Del. Super. Ct. 2017).

[40] Appellee's Resp. at 3.

[41] *Id.* at 4 (quoting 532 U.S. 598, 600 (2001)); This Court need not reach DSP's argument that "this case steadfastly falls under *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*" 532 U.S. 598 (2001). In *Buckhannon*, the United States Supreme Court analyzed two federal statutes (the Fair Housing Amendments Act and the Americans with Disabilities Act) that provided that a "prevailing party" may recover attorney fees and costs at the court's discretion. *Id.* at 601. In a 5-4 decision, the United States Supreme Court held that a "prevailing party" does not include a party that "failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Id.* at 600. This decision rejected the previously recognized federal "catalyst theory," which "posits that a plaintiff is a 'prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Id.* at 601.

Subsequent federal FOIA cases have followed *Buckhannon*. *See, e.g., Union of Needletrades, Indus. & Textile Employees, AFL-CIO, CLC v. U.S. I.N.S.*, 336 F.3d 200, 206 (2d Cir. 2003) (applying *Buckhannon* to a federal FOIA action); *Oil, Chem. & Atomic Workers Int'l Union, AFL-CIO v. Dep't of Energy*, 288 F.3d 452, 455 (D.C. Cir. 2002). In 2007, Congress amended the federal

"prevailing party" from the "successful plaintiff" language of 29 *Del. C.* § 10005(d) arguing that "Delaware courts use the terms 'prevailing party' and 'successful party' interchangeably and make no distinction between the two terms."[42]

DSP relies on *Buckhannon* for its contention that an "enforceable judgment on the merits and court-ordered consent decrees create the material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees."[43] With this rationale, DSP argues that Appellant is not entitled to an award of fees and costs because "[h]ere, there has been no material alteration of the legal relationship between Appellant and DSP."[44] DSP essentially argues that Appellant cannot be characterized as "successful" when he "voluntarily withdrew his action having never received the documents he originally requested."[45]

---

FOIA statute to "redefine[] the term 'substantially prevailed' under FOIA to include cases where the plaintiff has obtained 'relief' through *either* 'a judicial order or an enforceable written agreement or consent decree,' *or* 'a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial.'" *Hernandez v. U.S. Customs & Border Prot. Agency*, 2012 WL 398328, at *6 (E.D. La. Feb. 7, 2012) (citing OPEN Government Act of 2007, Pub. L. No. 110–175, § 4(a), 121 Stat 2524). This amendment "abrogated the *Buckhannon* rule with respect to [federal] FOIA claims." *Id.*

DSP, in urging that this case "falls steadfastly under *Buckhannon*[,]" seems to argue that *Buckhannon* has binding effect on this Court. However, and as was noted soon after *Buckhannon* was decided, "*Buckhannon* is not binding on state or federal courts when construing state statutes." Roy Simon, *Is "Catalyst Theory" of Attorney Fees Still Alive?*, New York Legal Ethics Reporter, June 1, 2005. *Compare Tibbetts v. Sight "n* [sic] *Sound Appliance Centers, Inc.*, 2003 OK 72, ¶ 23, 77 P.3d 1042, 1053 (choosing to adopt *Buckhannon*), *with Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 568 (2004) (choosing not to apply *Buckhannon*). DSP's argument that Appellant's contentions "fl[y] in the face of the clear holding of [*Buckhannon*] does not appear to recognize that *Buckhannon* is not binding on this Court. Appellee's Supplemental Resp. at 5-6.

A Delaware case has stated, "[n]othing in the statutory scheme or legislative history of our Act suggests that the Delaware General Assembly expected this Court to apply standards for fee awards applied by the Federal Courts under the Federal Act." *Turner*, 1998 WL 326489, at *1 (declining to apply the federal FOIA statute in 5 USC § 552 when asked by the defendant to apply a standard utilized by federal courts to determine whether to award attorney fees and costs). No Delaware court appears to have expressly adopted either the federal *Buckhannon* approach or the "catalyst theory"; instead Delaware courts have decided whether the award of attorney fees and costs was warranted on a case-by-case basis.

[42] Appellee's Resp. at 4. (citing *In re: Brittingham et al. v. Town of Georgetown*, 2011 WL 7781414, at *1 (Del. Super. Aug. 12, 2011)).

[43] *Id.* at 5 (quoting *Buckhannon*, 532 U.S. at 604 (internal quotation marks omitted)).

[44] *Id.*

[45] *Id.*

## IV. STANDARD OF REVIEW

A motion for attorney fees and costs in a FOIA administrative appeal pursuant to 29 *Del. C.* § 10005(d) is addressed to the discretion of this Court.[46]

## V. DISCUSSION

This Court declines to award attorney fees and costs pursuant to 29 *Del. C.* § 10005(d) because, despite Appellant achieving a *de minimis* amount of success in an administrative appeal stemming from his FOIA action, this Court, in its discretion, deems an award of attorney fees and costs in this case unwarranted.[47]

*A.* *The Award of Attorney Fees and Costs under Delaware's Freedom of Information Act*

Delaware's FOIA statute "provides for open meeting and open records of governmental or public bodies."[48] The policy underlying FOIA, found at 29 *Del. C.* § 10001, states:

> It is vital in a democratic society that public business be performed in an open and public manner so that our citizens shall have the opportunity to observe the performance of public officials and to monitor the decisions that are made by such officials in formulating and executing public policy; and further, it is vital that citizens have easy access to public records in order that the society remain free and democratic. Toward these ends, and to further the accountability of government to the citizens of this State, this chapter is adopted, and shall be construed.

---

[46] *Gannett Co. v. Bd. of Managers of the Delaware Criminal Justice Info. Sys.*, 840 A.2d 1232, 1240 (Del. 2003) ("The award of attorneys' fees is a matter of the trial court's discretion."); *Chem. Indus. Council of Delaware, Inc. v. State Coastal Zone Indus. Control Bd.*, 1994 WL 274295, at *15 (Del. Ch. May 19, 1994) (declining to award attorney fees and costs "as a matter of discretion.").

[47] This Court, however, expresses no view on the applicability of this holding to a potential FOIA enforcement action brought pursuant to 29 *Del. C.* §§ 10005(b) & (e). *See* Agreement and Order, May 4, 2017 at 4.

[48] *Flowers v. Office of the Governor*, 167 A.3d 530, 542 (Del. Super. Ct. 2017), *as corrected* (Aug. 22, 2017) (quoting *Guy v. Judicial Nominating Comm'n*, 659 A.2d 777, 780 (Del. Super. Ct. 1995)).

§ 10005 of FOIA provides redress in the event of a FOIA violation.[49] In addition to the remedies enumerated in the statute,[50] "[t]he court may award attorney fees and costs to a successful plaintiff of any action brought under this section."[51] In order for a plaintiff to be eligible to recover fees, a plaintiff must be successful. Whether to award fees thereafter is within the discretion of this Court.

This Court has elected in other cases not to automatically award attorney fees and costs to a successful plaintiff. Thus, this Court in *Chem. Indus. Council of Delaware, Inc. v. State Coastal Zone Indus. Control Bd.* found that a FOIA violation had occurred, but still declined to grant plaintiffs' request for attorney fees and costs, stating that "29 *Del.C.* § 10005(d) . . . authorizes (but does not require) the Court to award such relief to a successful plaintiff."[52] In *Hoster v. Poppiti* this Court stated, "[e]ven if the plaintiff feels he was successful pursuant to this statute because the litigation triggered the State's response, I still would not automatically award attorneys' fees and costs because same are discretionary under the statute."[53]

> B.    *Attorney Fees and Costs Are Not Warranted Pursuant to 29 Del. C. § 10005(d) Under the Facts of This Particular Case.*

This Court declines to award attorney fees and costs in any amount because Appellant's success was, relative to his original FOIA request, minimal. Appellant accurately characterizes that the plaintiff's "threshold, qualifying requirement" of 29 *Del. C.* § 10005(d) is that he be "successful."[54] A "successful plaintiff,"[55] or synonymously a "prevailing party," is "[a] party in whose favor a judgment is

---

[49] 29 *Del. C.* § 10005(b) ("Any citizen denied access to public records as provided in this chapter may bring suit within 60 days of such denial.").

[50] 29 *Del. C.* § 10005(d) ("Remedies permitted by this section include an injunction, a declaratory judgment, writ of mandamus and/or other appropriate relief. The court may award attorney fees and costs to a successful plaintiff of any action brought under this section.").

[51] *Id.*

[52] 1994 WL 274295, at *15 (Del. Ch. May 19, 1994) (exercising discretion to not award fees to a plaintiff after finding a FOIA violation occurred).

[53] 1994 WL 680012, at *1 (Del. Super. Ct. Sept. 19, 1994).

[54] Appellant's Mot. at 1-2.

[55] Appellant relies on *Turner v. City of Newark* to distinguish "successful plaintiff" in Delaware's FOIA statute from "prevailing party" in the federal FOIA statute at 42 U.S.C. § 1988. Appellant's Mot. at 2 n.1 (citing 1998 WL 326489, at *1 (Del. Ch. May 21, 1998)). This is an irrelevant distinction as discussed *infra* at note 57.

rendered, regardless of the amount of damages awarded."[56] In general, Delaware courts use "prevailing party" and "successful party" interchangeably.[57]

Appellant contends that he qualifies as a "successful plaintiff" because he obtained documents that "answered [his] most important questions" "as a result of pursuing this action."[58] However, irrespective of the possible current utility of the disclosed documents to Appellant and to the public, this Court finds that they were a small portion of the original request. The Agreement and Order dismissing the appeal (except for the unresolved attorney fees and costs issue) stipulates that "since filing the Notice of Appeal, [DSP has] provided additional explanations of the nature of the search conducted as to each category of the request, as well as additional responsive documents including an additional non-disclosure agreement and three applications for court orders and resulting court orders."[59] The "responsive documents" are apparently "only the FBI non-disclosure agreement and redacted versions of purchase orders[]"[60] as well as "an additional non-disclosure agreement and three applications for court orders and resulting court orders."[61] The FBI non-disclosure statement satisfies section three of Appellant's nine-section FOIA request.[62] The purchase orders satisfy only one of several items listed in section one of Appellant's request.[63]

---

[56] *Party*, BLACK'S LAW DICTIONARY (10th ed. 2014).

[57] *See, e.g.*, *James v. Nat'l Fin., LLC*, 132 A.3d 799, 835 n.32 (Del. Ch. 2016) ("the court . . . may award reasonable attorney's fees to the prevailing party."). *But see id.* at 839 (holding that a party may recover "reasonable attorneys' fees and costs in the case of any successful action" (internal quotation marks omitted)); *see also 2009 Caiola Family Tr. v. PWA, LLC*, 2015 WL 6007596, at *33 (Del. Ch. Oct. 14, 2015) ("Although Plaintiffs were the prevailing party, this Court has held that where the plaintiff's success is not entire, the Court has discretion to adjust the award by ... reducing the award to account for the limited success." (internal brackets and quotation marks omitted)).

[58] Appellant's Mot. at 3.

[59] Agreement and Order, May 4, 2017 at 2.

[60] Appellant's Op. Br. at 11.

[61] Appellant's Mot. at 2 n.2 (quoting Agreement and Order, May 4, 2017).

[62] Appellant's Notice of Appeal at 2

> C) All requests by the Harris Corporation or any other corporation or any state or federal agencies, to the State Police to keep confidential any aspect of the State Police's possession and use of cell site simulators, including any nondisclosure agreements between the State Police and the Harris Corporation and any other corporation, or any state or federal agencies, regarding State Police's possession and use of cell site simulators.

[63] *Id.*

These documents represent a minimal portion of Appellant's original FOIA action. Disclosure of them does not fairly characterize Appellant's action as "successful" as contemplated under the statute. "Success" has been defined as "the favorable . . . termination of attempts or endeavors; *the accomplishment of one's goals*."[64]

Appellant relies on *Bd. of Managers of the Delaware Criminal Justice Info. Sys. v. Gannett Co.* for the proposition that a plaintiff may recover a fee award under 29 *Del. C.* § 10005(d) for obtaining only a portion of the records originally requested.[65] However, *Gannett* is distinguishable from the facts here because in *Gannett*, the defendants[66] obtained data that resolved the "ultimate issue" underlying the FOIA request.[67] Appellant in this case appears to characterize "whether [DSP was] seeking proper court authority and disclosing sufficient information to the courts" as the "ultimate issue."[68] This seems to pertain to section 9 when he requested

> 9) All applications submitted to state or federal courts for search warrants or orders authorizing use of cell site simulators by the State Police in criminal investigations or authorizing use of cell site simulators owned by the State Police in criminal investigations, as well as any warrants or orders, denials of warrants or orders and returns of warrants associated with those applications. If any responsive records are sealed, please provide documents sufficient to identify the court, date and docket number for each sealed document.[69]

> A) Records regarding the State Police's acquisition of cell site simulators, including invoices, *purchase orders*, contracts, loan agreements, solicitation letters, correspondence with companies providing the devices, and similar documents. In response to this request, please include records of all contracts, agreements and communications with Harris Corporation.

(emphasis added).

[64] *Success*, DICTIONARY.COM (Random House 2017), http://www.dictionary.com/browse/success (emphasis added).

[65] 2003 WL 1579170, at *3 (Del. Super. Ct. Jan. 17, 2003).

[66] Gannett was the defendant in the lawsuit, however Gannett was "considered a 'plaintiff' for purposes of the FOIA statute because Gannett asserted a counterclaim." *Id.*

[67] *Id.* ("Gannett was successful on the ultimate issue of being able to receive fictional numbers to link the fields of data together.").

[68] Appellant's Mot. at 3.

[69] Appellant's Notice of Appeal at 3.

DSP's explanation to section 9 in an April 22, 2016 letter to Appellant reads:

> The answer is the same as stated above. [Electronic Surveillance Unit] does not investigate nor do they maintain any of these records. The individual investigating detective maintains the application and affidavit and sealed court order.[70]

This Court does not find that "whether [DSP was] seeking proper court authority and disclosing sufficient information to the courts" as urged by Appellant rises to the level of an "ultimate issue" as this Court found in *Gannett*. Appellant fails to demonstrate how this answer as provided by DSP was of such importance as to declare Appellant a "successful plaintiff" entitled to attorney fees and costs under § 10005(d) because this "success" was *de minimis*.

Further, as to the remaining undisclosed documents, Appellant's professed satisfaction with DSP's explanations for withholding the documents does not render Appellant "successful" for purposes of recovering a fee award under 29 *Del. C.* § 10005(d). However, obtaining explanations for why DSP is unable to produce the documents that Appellant requested can hardly result in Appellant being a "successful plaintiff." Appellant accomplished much less than what he originally sought: to obtain all documents in all nine categories.

Appellant cites to *Layfield v. Hastings* for the proposition that, although a court does not enter judgment for a plaintiff, a plaintiff can be found to succeed in the suit practically.[71] However, the plaintiffs in *Layfield* had brought a FOIA claim "to prohibit defendants from taking action purportedly authorized at a [public] meeting [at which they could authorize demolition of plaintiffs' house] that did not comply with the public notice provisions of that statute."[72] Once the plaintiffs initiated the suit, however, the town decided not to demolish the house and therefore the plaintiff's suit had become moot.[73] The Court of Chancery awarded attorney fees and costs to the plaintiffs because "they have succeeded in the outcome of this law suit from a purely practical point of view."[74]

---

[70] Ex. B. of Appellant's Op. Br. at 3.

[71] Appellant's Reply (quoting *Layfield v. Hastings*, 1995 WL 419966, at *2 (Del. Ch. July 10, 1995) ("Although no judgment has been entered for the plaintiffs, they have succeeded in the outcome of this law suit from a purely practical point of view.")).

[72] 1995 WL 419966, at *1 ("The action sought to be enjoined was the demolition of a house owned by plaintiffs.").

[73] *Id.*

[74] *Id.* at 2.

The difference between the plaintiffs in *Layfield* and Appellant here is that the *Layfield* plaintiffs essentially accomplished what they sought to accomplish when they brought their FOIA claim: to enjoin demolition of their house. Here, Appellant has not recovered the records he initially sought in his FOIA request. At best, he recovered only two records (redacted purchase orders and the FBI nondisclosure agreement) and explanations for the nondisclosure of everything else he requested. This Court is not convinced that recovery of two documents and explanations for why DSP cannot disclose the remaining requested records was what Appellant sought to accomplish when he originally brought his FOIA action. Thus, he is not a "successful plaintiff" to warrant an award of attorney fees and costs under 29 *Del. C.* § 10005(d).

\* \* \*

In further support of this Court's declining to award attorney fees and costs, this Court expressed "no view" in Paragraph A of the Parties' Agreement and Order that an aggrieved FOIA petitioner had a "right" to file suit rather than to appeal a decision of the CDAG. Paragraph A reads:

> A. Agreement as to FOIA Procedure. The Parties agree: that the 2010 amendments to Delaware FOIA created a screening procedure that must be completed by a FOIA petitioner seeking records from an agency represented by the Attorney General of Delaware; however, this procedure and the potential appeal from it do not displace a petitioner's right to file "suit" under 29 Del. C. § 10005(b); a petitioner seeking records from an agency represented by the Attorney General may file the same type of suit under § 10005(b) that they were able to file before the FOIA amendments and that they continue to be able to file with respect to agencies not represented by the Attorney General; as described in the relevant statutory sections, the petitioner or public agency "may" choose to appeal the CDAG's decision and rely on the record created before the CDAG, but "[t]he citizen shall have the absolute right" to file a separate lawsuit after complying with the statutory requirements of §§ 10005(b) & (e); in sum, there is an optional "appeal" of the CDAG's decision described in §§ 10005(b) & (e) that is limited to the record and is distinct from the "suit" described in §§ 10005(b) & (e) that remains available to all FOIA petitioners. *The Court expresses no view as to the parties' "agreement" in this paragraph.*[75]

Appellant argues that it was important to him that he secure a written agreement of the Appellees recognizing that a FOIA petitioner may file a de novo suit in Superior Court instead of pursuing an appeal from the [CDAG], as set forth

---

[75] Agreement and Order, May 4, 2017 at 3-4 (emphasis added).

in Section A of the Agreement and Order."[76] Appellant contends that this was important to him "because of his continuing concern about the lack of process he received in the proceeding before the Chief Deputy Attorney General that led to the improper denial of these documents prior to litigation, and how that might affect his future FOIA requests if not remedied by the Court."[77] Appellant contends that "[a]lthough the availability of that de novo suit after the FOIA amendments is an open question of law, the Agreement secured by Petitioner will prevent either entity from disagreeing with a petitioner's contention that such suit remains available."[78] However, as DSP points out, "Appellant's proposed 'important' language was thus converted from a Court-ordered provision to an agreement among parties."[79]

Even considering what minimal success Appellant achieved in his FOIA action, the award of attorney fees and costs pursuant to 29 *Del. C.* § 10005(d) is at the discretion of this Court.[80] "Public records laws in sixteen states[,] [which notably includes Delaware] and the District of Columbia[,] provide entirely discretionary fee awards."[81] The award of fees and costs here would not be a sound exercise of this Court's discretion under 29 *Del. C.* § 10005(d) because even if Appellant obtained some, but not all, of the records he originally sought, he certainly is not a "successful plaintiff" to the same degree as the defendant in *Gannett*. Thus, although Appellant apparently "feels [as did the plaintiff in *Hoster* that] he was successful pursuant to [§ 10005(d)] because the litigation triggered [DSP's] response[,]" the Court in this case elects not to award attorney fees and costs because that determination is discretionary under the Delaware FOIA statute.[82]

## V. CONCLUSION

The award to Appellant of attorney fees and costs in this case pursuant to Delaware's FOIA statute at 29 *Del. C.* § 10005(d) is not warranted because, although he achieved some *de minimis* success, he is not a truly "successful plaintiff." The

[76] Appellant's Mot. at 3.
[77] *Id.*
[78] *Id.*
[79] Appellee's Resp. at 2.
[80] 29 *Del. C.* § 10005(d) ("The court *may* award attorney fees and costs to a successful plaintiff of any action brought under this section.") (emphasis added); Katrina G. Hull, *Disappearing Fee Awards and Civil Enforcement of Public Records Laws*, 52 U. Kan. L. Rev. 721, 737 (2004).
[81] Katrina G. Hull, *Disappearing Fee Awards and Civil Enforcement of Public Records Laws*, 52 U. Kan. L. Rev. 721, 737 (2004).
[82] *Hoster*, 1994 WL 680012, at *1.

award of fees under 29 *Del. C.* § 10005(d) is within this Court's discretion. This Court finds that receipt of only a small portion of Appellant's initial FOIA request, coupled with DSP's various explanations for the nondisclosure of the rest, does not declare him a "successful plaintiff." The Court finds, in the exercise of its discretion, that the award of attorney fees and costs in this case is not warranted in this administrative appeal of a FOIA action where Appellant voluntarily withdrew his appeal in exchange for a very small portion of the materials comprising the original FOIA request. Therefore, Appellant's motion for attorney fees and costs is **DENIED**.

Richard R. Cooch, R.J.

cc: Prothonotary

19